ERNEST D. LeCLERE, appellant, v. IOWA ELECTRIC LIGHT AND POWER COMPANY et al., appellees.

No. 50609.

(Reported in 119 N.W.2d 203)

January 15, 1963.

Francis J. Pruss, of Cedar Rapids, for appellant.

Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellee Iowa Electric Light and Power Company.

Simmons, Perrine, Albright, Ellwood & Neff, of Cedar Rapids, for appellee Helen Hennessey.

Larson, J.—The plaintiff, Ernest D. LeClere, brought this action in three divisions to recover for personal injuries against the defendants, Iowa Electric Light and Power Company, herein referred to as the Company, and Helen Hennessey. In the first division he alleged specific negligence as to the Company, in the second as to Hennessey, and in the third specific acts of negligence as to both defendants which concurred to cause plaintiff's injuries. At the close of plaintiff's case both defendants moved for a directed verdict. Verdict was directed as to the Company only. The court submitted plaintiff's claim against Hennessey and her counterclaim against plaintiff to the jury. It returned a verdict denying recovery to both parties. Plaintiff's motion for a new trial was overruled and he appealed.

The issues raised in this appeal are: (1) Is there sufficient competent evidence in the record to support any of the specifications of negligence alleged so as to require their submission to the jury as against the defendant Company, and (2) did the court err in submitting the counterclaim of the defendant Hennessey? We find no reversible error.

In view of the alleged errors, a detailed examination of the relevant evidence is required. Perhaps it should first be noted that the electric wire involved was privately owned, a part of the farm wiring system and not the Company's transmission line.

Plaintiff testified that he owned and lived on a farm three miles east of Coggon, Iowa, and that a secondary road running east and west divided the farm buildings, the house and some outbuildings being on the north side, and the barn and some other buildings on the south. His farm was served with electrical energy by the defendant Power Company from a high line running along the north side of the road. From its transformer post lines ran to the house and to buildings and structures on the farm. The line involved ran from the transformer post to the windmill, thence back to an insulator attached to the Company pole, thence across the highway to a pole maintained by plaintiff in connection with his buildings on the south side thereof.

On the afternoon of June 8, 1958, a severe windstorm blew down a part of a large tree near the line to the windmill, tearing the line from the insulator attached to the Power Company pole so that it then ran from the windmill to the ground and thence across the road to the pole on the south side of the road. When the storm ceased, plaintiff, observing the resulting dangerous condition to traffic, placed a two-by-four some six feet tall under the wire on the north bank of the road which so stretched the wire that vehicles could pass safely under it. He testified:

"* * * That wire when I first observed it was down over the highway at rather a low level and the only way that cars could get around it then would be to go almost into the ditch and squeeze under it. On the north side of the road it would be almost down to the road within about a couple of feet. * * * To remedy that situation I got ahold of a board which was 6 feet 2½ inches tall and put it under there good and tight. That resulted in elevating that lone wire so that a vehicle would have to be awfully high to catch it. In my judgment there was no danger whatever of the wire being struck by a vehicle passing under it."

Plaintiff then contacted Mr. William Boyle, a repairman for the Power Company in Central City, and, being a thrifty and calculating person, he anticipated the job ahead. He testified:

"* * * Before he [Boyle] came out there I took my axe and trimmed away these limbs so that there was not more than six inches of the limb that was holding the wire down. It was my idea that all you would have to do was to grab ahold of the wire and pull it out and put it right back up to the pole. You would have to slide it out some under where it was pinned down. By following this method all you had to do was fasten the wire back up on the pole again. It would be the right length and everything. That was the reason I did this work with my axe *to speed up the work.*" (Emphasis supplied.)

The plan was excellent. The time and manner of its execution gave rise to this controversy.

Mr. Boyle had other calls to answer and did not arrive at plaintiff's farm until about nine o'clock p.m. Arriving from the west, Boyle drove his truck into the entrance of the north drive-way and put his floodlight on the transformer pole. When plaintiff saw this, he went for his cap and after that had no firm recollection of what occurred. He testified: "* * * well I had it in my mind to go out and show him how them wires were, and figured *I'd just pull them out of there* and put it up, and it seems like I have a faint recollection that I was reaching down for the wires and then—and then stooping over for something, and then I don't—there was either a crash or something, and that was the last." (Emphasis supplied.)

A Mr. Erwin F. Fleming accompanied Boyle to the farm and he remained in the truck while the unfortunate events took place. Called as plaintiff's witness, he testified he did not see anyone touch the wire prior to the time it was struck by the Hennessey car. He saw the wire shortly after they arrived and then plaintiff and Boyle were near it. He said a short time later the Hennessey car, traveling at about 40 or 45 miles an hour, approached from the west and collided with the lowered wire.

After the collision, he said it slowed to almost a stop and then continued on its way.

Mr. Boyle, also called on behalf of plaintiff, testified that he was employed as the Power Company lineman, that he arrived at plaintiff's farm about nine o'clock that evening, and that he did not observe the low-hanging wire until it was pointed out to him by plaintiff. He had parked his truck on the north side of the road and fixed his floodlight on the Company's pole to plaintiff's premises. When he first saw the wire, it was suspended over a board and was high enough for him to walk under it. He was 5 feet 8½ inches tall. He testified he never saw the wire off this prop, or two-by-four. He further testified he saw plaintiff take hold of the wire, but that he did not participate in that undertaking. In reply to the question, "Did you at any time take ahold of this wire when it was at the height of six feet two inches above the ground, as you say it was when you walked under it? Did you take ahold of that wire at any time or touch that wire or anything between the time you observed it there and the time you saw Mr. LeClere come along and grab ahold of it? A. No, I did not." He further testified that when the accident occurred, the plaintiff was holding this wire. He thought the wire was about knee high when he observed plaintiff holding it just before the accident, that it was "just in seconds" after he saw plaintiff pull the wire out from beneath the tree that the collision occurred which threw plaintiff to the ground painfully injuring him.

At the time the wire was hit Boyle said he was about 15 or 20 feet west of plaintiff near the transformer pole. While plaintiff had no clear recollection, it appears he admitted it was his intention to go out to the tree, pull the wire from under the branches holding it down, and have the lineman replace it on the transformer pole. The repairman's job would then be short and simple. Plaintiff's injury discloses that at the time the wire was struck by the Hennessey car he had the wire in his hand, and his feet were astraddle or near it.

It is the Company's contention that under this evidence, or lack thereof, the court was compelled to sustain the Power Com-

pany's motion to direct a verdict in its favor. It maintains the plaintiff had failed to prove by any evidence that this defendant or its employee had removed the prop which plaintiff had placed under the wire to prevent it from sagging so low over the roadway so as to be struck by oncoming vehicles, that there was no showing Boyle had undertaken any repair work at the time of the accident, and that there was no showing it had a duty to look out for, warn or stop vehicles approaching on the road, or to warn plaintiff of his precarious position should any vehicle pass by at that time. Appellee Power Company also contends it clearly appears plaintiff failed to offer any proof of his own freedom from contributory negligence, but on the contrary it shows conclusively that he was guilty of such negligence. We think the evidence sustains both contentions.

Plaintiff's burden in seeking recovery from each of the defendants was to plead and prove, not only negligence on the part of each defendant, but also his freedom from negligence which contributed to his injury and damage. Fleming, of course, was an eyewitness.

I. There could be no negligence of the defendant Power Company in the absence of the breach of some duty which it owed to the plaintiff. Lagerpusch v. Lindley, 253 Iowa 1033, 115 N.W.2d 207, and citations. At the conclusion of plaintiff's evidence the trial court found no such breach and, although it recognized the lack of affirmative evidence as to the issue of contributory negligence, based its decision on the failure to submit substantial proof of any Company fault.

To sustain a recovery on a theory that the injury was caused by the negligence of the Company employee Boyle, it must appear that there existed, at the time and place where the injury was inflicted, a duty on the part of the defendant and a corresponding right in the plaintiff for the protection of the latter. See 38 Am. Jur., Negligence, section 12, page 652.

It is apparent then that plaintiff's case against the Company rests, first, upon a substantial showing of an undertaking of the repair job by Boyle creating the duty on his part to exercise care. In plaintiff's first specification of negligence he

alleged "(a) In removing a prop which the plaintiff had placed under said wire earlier on said date to prevent said wire from sagging so low over the roadway so as to be struck by oncoming vehicles." Had that been established by any substantial evidence, the undertaking would have been a fact issue, but there was not a scintilla of evidence to support it. In fact, the evidence was all to the contrary. It appears from the testimony that plaintiff had been showing Boyle the situation and had told him of his very good plan to remove the wire intact from the tree limbs and simply replace it on the insulator attached to the Company post. The plan was simple and would have been easily accomplished. But while Boyle was over near the transformer pole, apparently considering the task at that spot, plaintiff himself undertook the task of removing the wire from under the tree limbs. This, in turn, released the tension holding the wire above the road and it came down only seconds before it was struck by the Hennessey car. Boyle had not asked plaintiff to so act, and it does not appear he was aware plaintiff intended to do so at that time.

While it may be true that once the Company employee has commenced the repair work, a duty to use due care would arise which would involve assisting acts of others, voluntarily or otherwise, there was nothing shown here from which it could be properly inferred that the Company employee had as yet taken charge of the repair work or assumed that responsibility. The testimony showed he had not yet touched a wire and that he had observed no danger in the situation as it existed when he arrived. Thus plaintiff's theory of a master and servant relation, without any substantial basis therefor, is not helpful to him.

On the other hand, plaintiff knew of the danger, for he had placed the pole under the wire so that it was held safely over the road, and knew or should have known when he released that tension that it would again drop down over the roadway and obstruct traffic. He gave no warning of his intentions. He did not look to see whether cars were approaching, but, in fact, turned his back toward the road, straddled the wire, and pulled it free from the pinning tree limbs. It is difficult to see how

that act would not constitute a lack of care on his part, and not be negligence which caused or at least contributed to his injury. Apparently it was the sole proximate cause thereof.

■   Obviously there was no duty to warn plaintiff as to a condition of danger already recognized by him or which he himself created. Atherton v. Hoenig's Grocery, 249 Iowa 50, 56, 86 N.W.2d 252; Anderson v. Sheuerman, 232 Iowa 705, 710, 6 N.W.2d 125. As stated in the Atherton case, actual knowledge of the danger is equivalent to or perhaps better than a warning. All that appears here is that plaintiff, in order to hurry the job, anticipated Boyle's acts and, unfortunately, prematurely eliminated the safety provisions he himself had established.

From what we have said, it is clear plaintiff's other specifications of negligence, i.e., that the Company failed to warn approaching vehicles of the low-hanging wire, or keep a lookout, or to stop said vehicles under these conditions, were not established. Boyle had not as yet undertaken the repair work nor was he aware plaintiff intended to lower the wire over the roadway before proper preparations were made. It does not appear that Mr. Fleming was a Company employee or had assumed any task at that time or place. He was in no way obligated to act as a flagman and, at least until he did so, there was no duty upon him to warn either the plaintiff or the public of a potential danger.

We are satisfied there was a total failure to establish any duty on the part of the Company at that time and place which was breached, but on the contrary we believe plaintiff failed to show in any way his freedom from negligence which caused or contributed to his injury and damage. The verdict, therefore, was properly directed in favor of the Power Company defendant.

II.   The learned trial court, using an abundance of caution, submitted to the jury Division II alleging specific negligence on the part of Helen Hennessey. At the same time it submitted her counterclaim against plaintiff for damage to her vehicle in the sum of one dollar. The jury denied both claims.

Plaintiff's second assignment of error states, "The court erred in submitting to the jury for its consideration the counter-

claim of the defendant, Helen Hennessey, and the court erroneously instructed the jury regarding presumed negligence provided for in section 489.15, Code of Iowa, 1958."

We, of course, do not know the basis of the jury verdict, but observe that there was substantial evidence to support a finding that plaintiff failed to prove specific negligence as to Helen Hennessey or to prove his freedom from contributory negligence. Plaintiff prevailed in the counterclaim and, although there may have been error both as to the basis upon which that issue was submitted and in the court's instruction as to counterclaim defendant's burden to overcome a statutory presumption of negligence against him, yet such errors are not considered so prejudicial as to require the granting of a new trial. Cunningham v. Court, 248 Iowa 654, 662, 82 N.W.2d 292, and cases cited therein.

In submitting defendant Helen Hennessey's counterclaim, the court instructed that said defendant Helen Hennessey must prove by a preponderance of the evidence that the plaintiff was negligent and that said negligence was the proximate cause of the damages, that the defendant was free from contributory negligence, and that defendant counterclaimant had sustained some damages; also that if she had failed to prove any one of the foregoing propositions by a preponderance of the evidence, verdict would not be for the defendant counterclaimant. In instructing that in case of injury to a person or property under section 489.15 of the Code of Iowa, 1958, a presumption of negligence arises against the owner of the line, the court did instruct that plaintiff has a right to overcome such presumption by evidence that he exercised due and reasonable care and caution under the circumstances and, further, that if such evidence was clear and convincing to overcome or rebut such presumption, then the defendant has not proven the negligence of the plaintiff by a preponderance of the evidence and that, respecting defendant's counterclaim, the defendant has proven the plaintiff was negligent if plaintiff so fails to offer clear and convincing evidence to overcome or rebut the presumption. On motion for new trial by the plaintiff, after the jury had denied recovery to both plaintiff and defendant Helen Hennessey, the

court overruled the motion for a new trial on the basis that error, if any, did not prejudice the plaintiff since the jury did not find for the defendant on her counterclaim.

Complaint is made that the trial court permitted the submission of the doctrine of res ipsa loquitur and plaintiff contends that without it no cause of action against him was pleaded or established. Plaintiff also contends chapter 489, Code of Iowa, 1958, concerns itself with transmission lines only and does not apply to privately owned wires that cross roadways to adjoining farm buildings. We need not decide that question here, but on that issue see Taschner v. Iowa Electric Light & Power Co., 249 Iowa 673, 86 N.W.2d 915.

■■■ The rule is well settled in Iowa that a jury verdict finding against defendant on his counterclaim obviates any prejudice from an alleged error of which plaintiff might otherwise complain. Cunningham v. Court, supra; Baker v. Zimmerman, 179 Iowa 272, 277, 161 N.W. 479; Harriman v. Roberts, 211 Iowa 1372, 1375, 235 N.W. 751. While that rule also applies to plaintiff's complaint of the trial court's instruction on the defendant's burden to overcome the presumption established by section 489.15, Code, 1958, we find it advisable to point out that such a presumption need only be overcome or rebutted by a preponderance of the evidence rather than by "clear and convincing evidence" as the court required in Instruction No. 6. Nevertheless, the error was without prejudice, for the jury by its verdict rejected Miss Hennessey's counterclaim. Its effect is the same as if plaintiff's motion to direct had been sustained. Furthermore, under this record we find no reversible error occurred by that submission.

■■■ III. Assigned errors with respect to the court's instructions herein would be moot if a directed verdict in defendant Hennessey's favor was required. Iowa Elec. Co. v. Home Ins. Co., 235 Iowa 672, 676, 17 N.W.2d 414, 416. It is stated therein: "The successful party may, without appealing or assigning errors, save the judgment if an error was committed against him which, if corrected, will make the result reached below a right result."

As indicated in Division I hereof, we believe the court should have sustained defendant Hennessey's motion to direct a verdict in her favor based upon plaintiff's complete failure to prove freedom from negligence which contributed to his injury and damage.

While it is true "it is only in 'very exceptional cases' that a verdict may be directed because contributory negligence appears as a matter of law", we are satisfied the case at bar falls within the category of a very exceptional case. Peterschmidt v. Menke, 249 Iowa 859, 863, 89 N.W.2d 152, 154. Also in that regard see Jacobson v. Aldrich, 246 Iowa 1160, 1164, 68 N.W.2d 733, and cases cited, where no substantial evidence of freedom from contributory negligence appeared, and Murphy v. Iowa Elec. Co., 206 Iowa 567, 220 N.W. 360, a case where the facts closely parallel those at bar. As to the proximate cause of this injury and the obvious negligent act of plaintiff, reasonable minds would not disagree.

Furthermore, the evidence as to Miss Hennessey's negligence is very thin. It discloses only that she was driving on this straight, level, smooth and well-traveled highway at 45 miles per hour, that she did not and perhaps could not see the small one-fourth inch black wire before the collision, saw no person in or near that place, and drove on when she became frightened as she realized she struck a wire which may have been of high voltage. Only plaintiff, whom she could not see, and Boyle were in the vicinity. A pickup truck in the farm driveway, with its spotlight on a service pole, gave little or no indication of danger to travelers on the highway. On the other hand, it appears the wire involved was dropped by plaintiff's acts only seconds before she arrived at the spot of contact. Even viewed in a light most favorable to plaintiff, it then seems that the sole proximate cause of his injury was his own unfortunate act of disturbing a previously established safe condition before proper precautions were taken for the safety of those in the vicinity.

This negligence is such as was referred to in the recent case of Miller v. Stender, 251 Iowa 123, 131, 98 N.W.2d 338, 343, where we quoted from Snook v. Long, 241 Iowa 665, 669, 42 N.W.2d 76, 78, 21 A. L. R.2d 1, as follows: "Negligence is the

proximate cause of an injury which follows such negligent act, if it can fairly be said that in the absence of such negligence the injury or damage complained of would not have occurred."

Finding no reversible error, the trial court's denial of plaintiff's motion for a new trial was proper and the judgment must be affirmed.—Affirmed.

All JUSTICES concur.