**Geraldine KROGER, Administratrix of the Estate of James Kroger, Deceased, Appellant.**

**v.**

**OMAHA PUBLIC POWER DISTRICT, Appellee.**

**No. 74–1757.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1975.

Decided Sept. 9, 1975.

Richard J. Dinsmore, Omaha, Neb., for appellant.

Denzel R. Busick, Omaha, Neb., for appellee.

Before HEANEY and WEBSTER, Circuit Judges, and NANGLE,* District Judge.

NANGLE, District Judge.

Plaintiff-Appellant, Geraldine Kroger, appeals from the decision of the District Court[1] granting summary judgment for defendant Omaha Public Power District. Appellant, as administratrix of the estate of James Kroger, brought suit based on diversity jurisdiction for damages resulting from decedent's wrongful death by electrocution.

Appellant's decedent was employed by Paxton & Vierling Steel Company at its factory in Carter Lake, Iowa. On January 18, 1972, decedent was involved in the movement of a large steel tank by means of a crane with a 60-foot boom. While one man drove the crane and another operated the boom, decedent walked alongside the tank to steady it. During this maneuver, the boom came close enough to high-tension lines that electricity from those lines arced over to the boom. Another arc of electricity arced from the tank over to decedent and killed him.

Omaha Public Power District ["OPPD"], a public corporation of the state of Nebraska, had at one time owned the transmission lines involved. On November 14, 1966, however, OPPD sold the lines and equipment to Paxton & Vierling. OPPD thereafter sold electricity to Paxton & Vierling and when so requested made repairs upon the lines and equipment.

The District Court based its order of summary judgment on the fact that ownership of the transmission lines lay indisputably with Paxton & Vierling, that OPPD had no duty to maintain the lines, that OPPD had not been requested to discontinue the flow of electricity on the date of the accident and that OPPD had not been put on notice that a crane was being operated in the vicinity of the lines. As a result, there was no duty owed by OPPD to decedent, the breach of which would give rise to liability.

Summary judgment under Rule 56, Federal Rules of Civil Procedure, will not be granted unless "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Rule 56(c). Any inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion and should there be any reasonable doubt as to the existence of a genuine issue of a material fact, summary judgment must be denied. *Giordano v. Lee*, 434 F.2d 1227 (8th Cir. 1970); *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388 (8th Cir. 1968); *Traylor v. Black, Sivalls & Bryson, Inc.*, 189 F.2d 213 (8th Cir. 1951). Appellant cites *Williams v. Chick*, 373 F.2d 330 (8th Cir. 1967), for the proposition that "a sum-

---

* JOHN F. NANGLE, United States District Judge, Eastern District of Missouri, sitting by designation.

1. The United States District Court for the District of Nebraska, Denney, J., filed an unreported memorandum opinion on August 23, 1974.

mary judgment proceeding does not provide a very satisfactory approach in tort cases." *Id.* at 332. Nonetheless, Rule 56 does not exclude tort claims, nor any other type of claims, from its provisions. While it is perhaps true that most tort cases would not be susceptible to a summary judgment, that is not to say that there are no claims sounding in tort which may be disposed of by means of a summary judgment.

■ A review of the applicable law leads this Court to the conclusion that the District Court was correct in granting summary judgment. *Cronk v. Iowa Power and Light Company*, 258 Iowa 603, 138 N.W.2d 843 (1966), sets forth the general law in this area:

> It is the duty of a person or corporation that maintains and controls wires or cables for the furnishing of electricity to others, to carefully and properly insulate their wires at all places where there is a likelihood or reasonable probability of human contact by persons whose business or duty or rightful pursuit of mere diversion or pleasure brings them without contributory fault on their part into the zone of danger
> * * *.
>
> The law is well settled in this state that one furnishing electricity, while not an insurer, is held to the highest degree of care consistent with the conduct and operation of the business. The defendant had the duty to use reasonable care commensurate with the danger to prevent the escape of electricity from its lines.

*Id.* at 847, 848. *See* also *Nelson v. Iowa-Illinois Gas and Electric Company*, 160 N.W.2d 448 (Iowa 1968). In these cases however, there was no dispute as to the ownership of the lines; it lay with the power companies. In *LeClere v. Iowa Electric Light and Power Co.*, 254 Iowa 779, 119 N.W.2d 203 (1963), the court refused to impose liability on the power company where the lines were privately owned and there was no showing of a duty to repair. In *Coleman v. Iowa Ry., Light & Power Co.*, 189 Iowa 1063, 178 N.W. 365 (1920), liability for wrongful death was placed on the power company even though the poles and lines belonged to decedent. The distinguishing factor was that liability was based on a breach of a duty of due care in the original construction of the lines and poles.

In the present case, ownership clearly lies with Paxton & Vierling. No claim is made that OPPD was negligent in the original construction of the lines. Liability, if any, must therefore be based on a breach of a duty to maintain or control the lines.

Iowa law is silent as to the conditions under which a non-owner will be said to have a duty to maintain or a right of control. Case law from other jurisdictions indicate that as a general rule a mere supplier of electricity cannot be held liable for injuries resulting from negligent maintenance of the lines and equipment. *White v. Orlando Utilities Comm'n*, 156 So.2d 879 (Fla.App.1963); *City of Decatur v. Parham*, 268 Ala. 585, 109 So.2d 692 (1959); *Reichholdt v. Union Electric Co.*, 329 S.W.2d 634 (Mo. 1959); *Hughes v. Louisiana Power & Light Co.*, 94 So.2d 532 (La.App.1956); *Louisville Gas & Electric Co. v. Johnson*, 282 S.W.2d 138 (Ky.App.1955); *Milligan v. Georgia Power Co.*, 68 Ga.App. 269, 22 S.E.2d 662 (1942). And the mere fact that the supplier was called in to make needed repairs does not impose a duty to maintain. *Bristol Gas & Electric Co. v. Deckard*, 10 F.2d 66 (6th Cir. 1926); *Louisville Gas & Electric Co. v. Johnson*, *supra*. Nor can it be said that OPPD had a right to control. To control means "to exercise restraining or directing influence over; to dominate; regulate * * *." Webster's New International Dictionary (2d ed. 1944). The facts show that OPPD did not hold such a position in relation to Paxton & Vierling's lines and equipment. The sale contract was absolute in its terms leaving OPPD without any incidence of control. The deposition of the president of Paxton & Vierling indicates that all control over the lines resided with Paxton & Vierling.

■ The facts also show clearly that OPPD did not know of the dangerous

condition. OPPD was not told that a crane would be used near the power lines, nor were they requested to shut off the power. Under these circumstances there can be no liability for a failure to insulate the lines as appellant contends. Even the owner of transmission lines is not under an absolute duty to insulate. *Nelson v. Iowa-Illinois Gas and Electric Co., supra,* 160 N.W.2d at 452. *Cronk v. Iowa Power and Light Company, supra.* Such liability therefore cannot be imposed on a non-owner.

■ Appellant asserts that Ch. 489.16 of the Iowa Code creates a presumption in her favor. That section reads:

In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof.

Appellant contends that OPPD was operating the line and therefore the statutory presumption arises. It cannot be said, however, that a mere supplier of electricity operates the transmission lines within the meaning of that word. As used in the statute, operation implies a right of control or ownership over the lines. Since OPPD neither owned nor controlled the lines, the presumption does not arise.

■ Appellant also states that OPPD did not comply with the laws of Iowa regulating the sale and distribution of electricity. This assertion is irrelevant to the issue of whether OPPD owed a duty to decedent. In order for a violation of a statute to be evidence of negligence, it must be shown that statute was intended to create a duty of care owed to a class of persons of which decedent was a member. *Prosser, The Law of Torts,* § 36, p. 192 (4th ed. 1971). The Iowa statute regulating the sale and distribution of electricity is clearly not such a statute.

■ Liability for negligence cannot be imposed without first establishing that a duty was owed to decedent. *LeClere v.*

*Iowa Electric Power Co.,* 254 Iowa 779, 119 N.W.2d 203 (1963). As a matter of law, OPPD did not owe any duty to decedent under the circumstances of this case for the reason that OPPD did not own the transmission lines, nor did OPPD have a duty to maintain or a right of control over the lines involved.

For the foregoing reasons, judgment of the District Court is affirmed.