**Karin HANKE, Appellant,**

v.

**GLOBAL VAN LINES, INCORPORATED, a corporation, Appellee.**

**No. 75–1543.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1976.

Decided April 12, 1976.

gently inflicted emotional distress upon her by repeatedly misrepresenting the time of delivery of her household goods for a period of over 100 days. Ms. Hanke alleged that these misrepresentations caused her severe emotional distress and physical discomfort eventually culminating in a mental breakdown requiring hospitalization for nine days. She demanded a jury trial.

Upon motion by Global, the district court entered summary judgment dismissing her claim. She appeals and we reverse.

Summary judgment is proper only where the moving party conclusively demonstrates that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law. Fed.R. Civ.P. 56. *Kroger v. Omaha Public Power District*, 523 F.2d 161, 162 (8th Cir. 1975). The record in this case is extremely sketchy. We have previously observed that summary judgment generally does not produce very satisfactory results in tort cases. *Williams v. Chick*, 373 F.2d 330, 332 (8th Cir. 1967). We are obliged to resolve all conflicting inferences which arise from the record against Global. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).

Read most favorably to Ms. Hanke, the record reveals the following facts. In July 1973, Ms. Hanke decided to move from Rochester, New York to Grand Forks, North Dakota, where she had obtained employment. Since her new job began on August 15, 1973, Ms. Hanke wished to obtain delivery of her household goods no later than August 13. She contacted several moving companies who declined to firmly promise an August 13 delivery date.

Eventually she contacted the Rochester representative of Global Van Lines. She explained her desire to move to Grand Forks, and emphasized to Global that prompt delivery by August 13 was essential. Global assured Ms. Hanke that it could make such delivery and picked up her furniture on July 26. At that time Global reas-

Nancy G. Maxwell, Grand Forks, N. D., for appellant; David Kessler, Grand Forks, N. D., on briefs.

Harold W. E. Anderson, Grand Forks, N. D., for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and VAN PELT, Senior District Judge.*

PER CURIAM.

Karin Hanke brought a tort action against Global Van Lines, Inc. She alleged that Global willfully, recklessly, or negli-

* ROBERT VAN PELT, Senior District Judge, District of Nebraska, sitting by designation.

sured her that prompt delivery would be made as promised. On August 10, Ms. Hanke received a telegram in Grand Forks from Global stating that the shipment of her goods had been delayed due to loading difficulties but that they were expected to arrive prior to August 24. On August 24, Ms. Hanke received another telegram from Global. This stated that delivery was expected prior to September 5. The shipment did not arrive by that date. Nothing in the record suggests that Ms. Hanke was informed by Global that the September 5th delivery would not be made.

On September 11, Ms. Hanke contacted the Interstate Commerce Commission (ICC) and requested assistance in obtaining delivery. The ICC made inquiry of Global concerning the shipment. Global advised the ICC that, "the shipment was in the process of preparation for loading and forwarding" and that delivery was anticipated prior to September 26 or 27. The ICC so informed Ms. Hanke. The shipment did not arrive as promised. Again, Global evidently did not inform Ms. Hanke of any reason for the delay.

Ms. Hanke then wrote a letter to the Grand Forks Herald, a local newspaper. The editor of that newspaper contacted Global and was assured that the goods would arrive through another carrier no later than October 15. This information was transmitted to Ms. Hanke. Ms. Hanke also contacted the two United States Senators from North Dakota (The Hon. Milton R. Young and The Hon. Quentin N. Burdick) seeking the assistance of their offices in obtaining information and expediting the shipment of her goods. Inquiries from these offices to the ICC led to further assurances from Global, indirectly communicated to Ms. Hanke, that the goods were on their way and would soon arrive. During this period Ms. Hanke also wrote directly to Global and placed telephone calls to Global's offices in California and in Rochester. She did not receive positive responses, although the California offices of Global indicated that the shipped items would arrive in a short time.

Partial delivery was finally made on October 24, 1973. Ms. Hanke was not informed at that time as to when the rest of her goods would be delivered or of the location of the rest of the shipment. A second delivery was made on November 14, and a third on November 20. Ms. Hanke's mattress has never been delivered to her.

■ The only explanation Global offered for these events was contained in the affidavit of its attorney, Harold Anderson. This affidavit included the following statements:

> That said moving contract was entered into by Defendant without malice and with the good faith intent and belief that it would be able to deliver Plaintiff's goods on the dates anticipated.

> That due to unexpected or unanticipated circumstances and without malice or intent to injure Plaintiff in any fashion, the Defendant was unable to deliver the Plaintiff's goods on the anticipated delivery date.

Rule 56(e) requires that affidavits offered in support of a motion for summary judgment

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

The affidavit of Global's attorney does not meet these criteria. It appears to be based on hearsay and it offers only conclusionary allegations that Global acted in good faith and without malice. Thus, the affidavit is entitled to no consideration in determining the propriety of summary judgment. *See McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).

Even if we were to consider and fully credit the affidavit, it would not meet the crux of plaintiff's case. At best, the affidavit establishes that Global entered the initial contract in good faith and that the August 13 delivery date was not met due to unforeseen circumstances. The affidavit does not allege that Global's repeated assurance of subsequent delivery dates, none of

which were met, were in good faith and without malice. As will become clear, it is these subsequent false statements upon which appellant's case hinges.

Global asserts that even assuming the above facts to be true, it is entitled to prevail as a matter of law. In support of its position, it advances two legal theories. First, Global argues that under federal law punitive damages and damages for emotional distress cannot be recovered for breach of a contract for interstate shipment of goods. Secondly, Global asserts that, as a matter of law, its conduct is not sufficiently outrageous to impose liability.

Global's first argument misanalyzes the nature of plaintiff's case. Ms. Hanke concedes that she could not recover the type of damages she seeks on a theory of negligent performance of Global's contractual duty to transport her goods with reasonable dispatch. *See Crump v. Thompson*, 171 F.2d 442, 447 (8th Cir. 1948); *Marquette Cement Mfg. Co. v. Louisville & Nashville R.R.*, 281 F.Supp. 944 (E.D.Tenn.1967). Instead, her complaint focuses primarily upon Global's repeated assurances that the goods were on their way and would soon be delivered—assurances which Ms. Hanke alleges were knowing misrepresentations. These repeated false assurances, she asserts, constituted outrageous conduct which intentionally or recklessly caused severe emotional distress in violation of § 46 of the Restatement (Second) of Torts (1965). Subsection 1 of § 46 reads as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Both parties and the district court have assumed that the North Dakota courts would follow § 46.[1] Ms. Hanke is clear that this is the theory upon which she seeks recovery from Global; she is not seeking damages for breach of contract.[2]

Therefore, we turn to Global's second contention that its conduct, as a matter of law, was not outrageous within the meaning of § 46. Global is correct that liability for emotional distress "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." § 46, comment d. The Restatement indicates that liability will only attach to highly objectionable conduct. Comment d states the following:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

As previously noted, the facts of this case show repeated assurances that delivery will be made by a certain day and repeated failures to make delivery at that time. In the absence of any explanation by Global, we believe that a reasonable jury could infer that these repeated misrepresentations were knowing falsehoods. A jury could also infer that these falsehoods were for the purpose of "stringing the plaintiff

---

1. The Ninth Circuit has recognized that allowing such an action is the modern trend in this developing area of the law. *Anderson v. Knox*, 297 F.2d 702, 729–31 (9th Cir.), *cert. denied*, 370 U.S. 915, 82 S.Ct. 1555, 8 L.Ed.2d 498 (1961). *See* Prosser, Torts § 11 (3rd ed. 1964).

2. Professor Prosser notes that "the earliest appearance of anything like a separate cause of action for the intentional infliction of mental suffering was in cases holding a common carrier liable for insulting a passenger." Prosser, *Torts*, § 11 at 44 n.49.

along." The jury could also infer that these falsehoods were intended to prevent the plaintiff from taking steps to obtain temporary lodging, new clothes, and incurring other expenses for which Global might be liable under the contract, for it had falsely represented that it would transport the goods itself. Ms. Hanke charges that it utilized a general commodities carrier to effect transportation of Ms. Hanke's personal property.

Additionally, under the circumstances, the jury could find the likelihood that Ms. Hanke would suffer severe emotional distress was "substantially certain" and that therefore Global "intended" this result. Restatement (Second) of Torts, § 8A. Putting aside intentional conduct by Global, a jury might otherwise infer that Global realized at an early time that Ms. Hanke was experiencing emotional distress in being deprived of her belongings but that it continued to mislead Ms. Hanke about the true situation, and that the repeated false assurances of imminent delivery were made with reckless disregard of Ms. Hanke's emotional state. *See* Restatement (Second) of Torts § 46, Comment i; § 500. Thus, viewing the record most favorably to the plaintiff, Global's misrepresentations to Ms. Hanke, to a newspaper, and to a United States governmental agency on several occasions, displayed such crass indifference to the rights of the public which ships household goods and personal effects by a motor transport common carrier that a recitation of these facts might well lead an average person to exclaim "outrageous" in characterizing the defendant's conduct.

Comment h under § 46 provides as follows:

It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.

Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

We believe that the facts of this case as alleged by appellant and supported by evidence opposing summary judgment are such that reasonable men might differ as to whether they demonstrate liability under § 46. Therefore, we conclude that Global has not demonstrated its right to prevail as a matter of law and the summary judgment was erroneous.

Ms. Hanke advances an alternative theory of liability for the unintended infliction of emotional distress under § 313 of the Restatement (Second) of Torts. Again, all parties in the district court appear to have assumed that § 313 states the law of North Dakota.[3] That section provides as follows:

(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

Comment 1(c), in part, reads as follows:

On the other hand, one who unintentionally but negligently subjects another to such an emotional distress does not take the risk of any exceptional physical sensitiveness to emotion which the other may have unless the circumstances known to the actor should apprise him of it. Thus, one who negligently drives an automobile through a city street in a manner likely merely to startle a pedestrian on a side-

---

**3.** The Fifth Circuit has upheld an award of damages for mental suffering against a telegraph company which negligently transmitted a false death notice. *Kaufman v. Western Un-* *ion Tel.,* 224 F.2d 723, 728 (5th Cir.), *cert. denied,* 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1950).

walk, is not required to take into account the possibility that the latter may be so constituted that the slight mental disurbance [sic] will bring about an illness.

In order to establish liability under this theory, Ms. Hanke must establish that Global knew or should have known that she was so deeply concerned about the failure to deliver her furniture and that continued misrepresentations which would generate continued expectations of immediate delivery, coupled with the delay which Global knew to be inevitable, created an unreasonable risk that Ms. Hanke could suffer great emotional distress resulting in illness and that this in fact occurred. Here, it is conceivable that the jury could find that because of the extreme measures taken by Ms. Hanke to obtain prompt delivery, and perhaps because of her demeanor and attitude on occasions when she contacted Global directly, Global should have recognized she was peculiarly susceptible to the emotional distress from Global's continuing misrepresentations.

This is particularly true since the jury could find that Global ought to have realized that its misrepresentations were likely to cause substantial physical discomfort to Ms. Hanke. The jury might find that Global should have realized that without a bed or furniture Ms. Hanke might sleep on the floor, and try to get along with her articles of summer clothing during fall weather in North Dakota, while expecting the arrival of her belongings in just "a few days." Global might well also have realized that by continuing for over 100 days to represent that delivery was imminent that this discomfort would continue for a long time.

While we are not prepared to say that Ms. Hanke can make out a case under § 313, we think that the evidence most favorably construed in her favor entitles her to proceed with the litigation, especially since most of the issues arising under § 313 will have to be further explored in connection with the § 46 claim. Therefore, we vacate the summary judgment and remand this case for further proceedings.