James BELLFLOWER, a minor, by Shirley Bellflower, next friend, Appellant,

v.

Santo PENNISE and Antonio Pennise, Appellees.

No. 76–1226.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1976.

Decided Feb. 9, 1977.

Thomas C. Boyle (argued), Francis D. Conner, Clayton, Mo., on briefs, for appellant.

Gerre S. Langton, St. Louis, Mo., argued; Evans & Dixon, Sam P. Rynearson, St. Louis, Mo., on briefs, for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is a diversity action brought for minor plaintiff-appellant by his next friend to recover damages for personal injuries sustained in a fire which ignited when three minor defendants[1] threw firecrackers into a shack containing spilled gasoline located on land owned by appellees Santo and Antonio Pennise. The district court[2] entered an order granting appellees' motion for summary judgment, and dismissing appellant's tort action without trial. We affirm.

James Bellflower was a citizen of Texas and almost fifteen years old in June, 1973 when he visited relatives in South St. Louis County who lived in the vicinity of a large vacant lot held for investment purposes by Santo and Antonio Pennise. The Pennise property had served for quite some time, without permission from the owners, as a gathering place for young people of the neighborhood who operated their motorbikes on it and had constructed a wooden shack at one end of the lot where they kept a cot and occasionally stored gasoline for refueling the motorbikes. During the week prior to his accident, James Bellflower had frequented the lot and utilized the shack.

On June 30, 1973 young Bellflower entered the shack where he tipped over a white plastic jug filled with gasoline which spilled on his leg. Shortly thereafter other youths threw a smoke bomb into the shack through a window and seconds later a firecracker followed which ignited the gasoline causing an explosion in which Bellflower was seriously burned.

Bellflower seeks to recover damages from the Pennises, owners of the vacant lot, on the theory that they maintained a public nuisance on their land in violation of Missouri law, or on the theory that they permitted an artificial condition highly dangerous to trespassing children within the purview of Restatement of Torts (First) § 339 (1934). Bellflower contends that summary judgment was improperly granted because there exist basic disputes of fact which preclude such remedy. The Pennises argue that there is no genuine issue as to any material fact necessary for determination of the case, and that as a matter of law they are entitled to prevail. We agree with the Pennises.

This court has often observed that summary judgment is an extreme remedy and one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207 (8th Cir. 1976); *Percival v. General Motors Corp.*, 539 F.2d 1126 (8th Cir. 1976); *Windsor v. Bethesda General Hospital*, 523 F.2d 891 (8th Cir. 1975).

We have also noted that summary judgment does not ordinarily provide a very satisfactory approach in tort cases. *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th

---

1. It appears from the information before us that the appellant made a satisfactory settlement with the minor defendants who actually threw the fireworks.

2. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

Cir. 1976); *Williams v. Chick,* 373 F.2d 330 (8th Cir. 1967), and we are always a bit troubled when a district court has entered summary judgment in a tort action.

■ Nevertheless, Fed.R.Civ.P. 56 may be applied in any appropriate case, and a district court is justified in granting summary judgment if, after viewing the evidentiary materials in the light most favorable to the party opposing the motion and giving that party the benefit of all inferences reasonably deducible from the evidence, the district court is convinced that upon a trial of the case to a jury a verdict in favor of the moving party would have to be granted. *Robert Johnson Grain Co. v. Chemical Interchange Co., supra.*

In the case before us, Bellflower contends that the Pennises permitted and maintained on their premises a public nuisance created by the activities of trespassing young people who used the property for their own purposes. It is urged that their repeated congregation, operation of motorbikes and erection of a wooden shack used occasionally to store gasoline constituted a public nuisance on the lot giving rise to liability in the landowners for injuries, such as Bellflower, sustained thereon.

Even if in the circumstances conditions on the property were deemed to be a nuisance of sorts and assuming arguendo that the Pennises had actual or constructive knowledge of the presence of the shack and of the use of their property by trespassing youngsters, we find that appellant would not be entitled to recovery under the theory he espouses.

As the district court aptly observed:

The public nuisance theory is premised on the contention that it was created by the continuing and repeated congregation of unsupervised trespassing young people (including plaintiff) who used the property to operate their motorbikes and as a visiting place. No case so holds. The operation of motorbikes on the lot by several teenagers including plaintiff (with the accompanying noise) no doubt was a "nuisance" to the residents in the neighborhood, but that is not the charac-

ter of the nuisance charged against defendants, nor was it under any view of the facts a causative factor. So, too, the fact that four days before Independence Day the youths brought firecrackers and smoke bombs to the lot does not operate to charge the owners of the property with responsibility for creating a public nuisance particularly where, as here, they had neither actual nor constructive notice thereof.

Memorandum, p. 2.

■ Ordinarily, a landowner is not civilly liable for a nuisance caused or promoted by others over whom he has no control; nor is he bound to go to expense or litigation to abate such a nuisance. *State ex rel. Wallach v. Oehler,* 159 S.W.2d 313 (Mo.App. 1942); 58 Am.Jur.2d *Nuisances* § 24 (1971). Moreover, the general rule is that in order to constitute an actionable nuisance, not only must a wrongful act of the defendant be shown but also the maintenance of the nuisance must be the natural and proximate cause of the injury. 66 C.J.S. *Nuisances* § 8b (1950). Thus, a person is not liable where his property is, by the act of independent third parties, made the instrumentality of a nuisance, since their act is the proximate cause. 58 Am.Jur.2d *Nuisances, supra.*

■ We agree with the district court that since the Pennises had neither actual nor constructive notice of the full nature of the nuisance alleged, nor did they proximately cause Bellflower's injuries, an action against them premised on a theory of public nuisance does not lie.

Appellant Bellflower next asserts that he is entitled to recover from the Pennises on the theory that they acted negligently by maintaining upon their property artificial conditions highly dangerous to trespassing children.

Missouri has adopted Restatement of Torts (First) § 339 (1934) which codifies the common law doctrine of "attractive nuisance." *Salanski v. Enright,* 452 S.W.2d 143 (Mo.1970). The section provides that a person in possession of land is subject to

liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains on the land if all of the following conditions are met: (a) the place is one where the possessor knows or should know that children are likely to trespass; (b) the condition is one which the possessor knows or should know involves an unreasonable risk of harm to trespassing children; (c) the children because of their youth do not realize the danger involved; and (d) the utility of the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

Bellflower claims that the dangerous condition maintained by the Pennises and imposing liability on them actually consisted of a collection of conditions including the presence of the wooden shack, motorbikes, gasoline and unsupervised children. He argues that the Pennises were negligent in not apprehending the nature of this conglomeration of conditions as dangerous, and in not foreseeing that it was likely to result in injury to children who came upon their property. We do not agree.

Although the Pennises may have had some knowledge of occasional motorbike riding on their property, its occurrence was so random and erratic that it cannot be considered an artificial condition "maintained" by the owners so as to subject them to liability within the meaning of § 339. Likewise, there was no cause for the Pennises to identify the motorbike riding or its attendant activities as involving an unreasonable risk, particularly with respect to the very youths who were trespassing to operate their bikes there, even if these teenagers were to be classified as "children" under § 339. The simple existence of unauthorized motorbike activity on his property imposes no affirmative duty upon a reasonable owner to inquire further into the situation or to bear responsibility for the risks accruing to those who participate in the activity.

The only condition that might possibly give rise to § 339 liability was the presence of the wooden shack. But Bellflower did not come to his injury because of the shack or because he was in it. He was hurt because some other young people threw inflammatory material into the shack. Had this young man been standing in the open air but in the immediate proximity of such gasoline fumes as were in the shack, a firework or even a lighted match could have caused exactly the same injury.

The Pennises could not have foreseen that the combination of events that took place would have occurred, or that the presence of the shack would have caused injury to anyone unless it were to have fallen down on an occupant, and that did not happen.

The order granting summary judgment to Antonio and Santo Pennise is affirmed.