**F. Patrick HUBBARD and Judy Hubbard, Appellants**

v.

**ALLIED VAN LINES, INC., Appellee.**

**No. 75–1922.**

United States Court of Appeals, Fourth Circuit.

Argued March 31, 1976.

Decided Aug. 5, 1976.

Walter A. Reiser, Jr., Columbia, S. C., for appellants.

Wayne F. Rush, Columbia, S. C. (Callison, Tighe, Nauful & Rush, Columbia, S. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Plaintiffs, the shippers of household furniture and other personal property, attack the legal correctness of an order of the district court striking from their complaint all allegations supporting recovery of punitive damages and damages for mental distress from defendant, a common carrier by motor vehicle, for breach of the duty of nondiscrimination imposed by Part II of the Interstate Commerce Act, 49 U.S.C. § 316(d). Assuming a private damage remedy would lie for a violation of § 316(d), the district court ruled that neither punitive damages nor damages for mental distress were proper elements of recovery. We reverse. We hold that a private right of action exists under 49 U.S.C. § 316(d), and that in a proper case punitive damages and damages for mental distress may be recovered. The allegations of plaintiffs' complaint were sufficient to entitle them to introduce proof supporting the recovery of such damages.

## I.

In substance, the complaint alleged the following: On July 5, 1973, plaintiffs contracted with defendant for defendant to pick up plaintiffs' household furniture at New Haven, Connecticut, and to deliver it to plaintiffs at Columbia, South Carolina, on about July 18, 1973. The defendant delivered about eighty per cent of the goods on August 8, 1973, and the remaining twenty per cent on October 10, 1973. Some of the items were lost and others were damaged. Because of the delay in delivery, plaintiffs incurred various out-of-pocket expenses. In addition,

plaintiffs suffered extreme mental anguish and distress by reason of the failure of the defendant to make delivery according to the contract, as the plaintiff F. Patrick Hubbard was starting a new career as a law professor, and the plaintiff Judy Hubbard, his wife, was at the time four months pregnant, and for these rea-

**1226**

sons the plaintiffs were particularly anxious to get established in their new home in July.

Plaintiffs alleged that the delay occurred because the defendant used its equipment to haul the goods of other unknown persons instead of plaintiffs' goods, "without any valid reason therefor," and that defendant thereby gave an undue and unreasonable preference to such other persons. Plaintiffs further alleged that defendant "acted in a reckless, willful, and wanton manner, in callous disregard of the rights of the plaintiffs." The prayer for relief sought $25,000 actual and punitive damages, interest, and costs.

Defendant moved to strike all portions of the complaint relating to the plaintiffs' mental distress and to the defendant's scienter, on the grounds that damages for mental distress and punitive damages were not recoverable for undue discrimination against a shipper. The district court granted the motion and ordered the material stricken. The parties subsequently entered into a stipulation as to the remaining damages (out-of-pocket expenses and damages for loss and breakage of property), and judgment was entered for plaintiffs in the stipulated amount. The plaintiffs appeal from that judgment.

## II.

■ In pertinent part, 49 U.S.C. § 316(d) provides:

It shall be unlawful for any common carrier by motor vehicle engaged in interstate or foreign commerce to make, give, or cause any undue or unreasonable preference or advantage to any particular person . . . in any respect whatsoever; or to subject any particular person . . . to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever . . . .

We have found no case discussing the issue of whether a private damage remedy will lie for breach of the duty imposed by this section. However, the Civil Aeronautics Act, 49 U.S.C. § 1374(b), imposes the same duty on common carriers by air, and it is well established that a private right of action exists for violation of that section. See, e. g., Nader v. Allegheny Airlines, Inc., 167 U.S.App.D.C. 350, 512 F.2d 527, 537 (1975), rev'd on other grounds, —— U.S. ——, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); Archibald v. Pan American World Airways, Inc., 460 F.2d 14, 16 (9 Cir. 1972); Fitzgerald v. Pan American World Airways, Inc., 229 F.2d 499, 501–02 (2 Cir. 1956). Defendant has suggested no reason for reaching a different result under Part II of the Interstate Commerce Act, other than to point to the obvious fact that the Aeronautics Act cases involve discrimination against *persons*, whereas this case involves discrimination against *property*. We believe this difference is immaterial, and are persuaded by the logic of the cases under the Aeronautics Act; thus, we hold that a private right of action exists for violation of 49 U.S.C. § 316(d).[1]

■ Defendant correctly observes, however, that the Carmack Amendment, 49 U.S.C. § 20(11),[2] concerning limitation of

1. We find it unnecessary at this time to decide the elements of a cause of action under § 316(d) and the proper allocation of evidentiary burdens on each element. See generally Nader v. Allegheny Airlines, Inc., supra, at 537–541.

2. In pertinent part, 49 U.S.C. § 20(11) provides:
Any common carrier . . . receiving property for transportation . . . shall be liable . . . for any loss, damage, or injury to such property caused by it . . . and any such common carrier . . . shall be liable . . . for the full actual loss, damage, or injury to such property caused by it . . . notwithstanding any limitation of liability or

limitation of the amount of recovery or representation or agreement as to value in any . . . receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be declared to be unlawful and void: . . . Provided, however, That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply . . . to property, except ordinary livestock, received for transportation concern-

liability by common carriers, is made applicable to motor carriers by 49 U.S.C. § 319, but not to carriers by air. Defendant contends that the Carmack Amendment precludes recovery of the sort of damages sought by plaintiffs here. If defendant's view of the Carmack Amendment is correct, then cases indicating that punitive damages may be recovered under the Aeronautics Act, *e. g. Nader v. Allegheny Airlines, Inc.,* 512 F.2d at 549–51; *Archibald v. Pan American World Airways, Inc.,* 460 F.2d at 16; *Wills v. Trans World Airlines, Inc.,* 200 F.Supp. 360, 366–67 (S.D.Cal.1961), are distinguishable.

Defendant places principal reliance on language of the Carmack Amendment making any common carrier receiving property for transportation liable for the "full actual loss, damage, or injury to such property caused by it" except where the I.C.C. has authorized the establishment of rates based on declared value, in which case liability may be limited to the declared value. (No suggestion is made that the exception is applicable to the instant case.) Based upon this language, defendant makes two arguments.

First, it contends that the phrase "to such property" indicates that the liability of motor carriers is limited by the Carmack Amendment to damages for physical injury to or loss of the property being transported. This contention has been repeatedly rejected by the Supreme Court. In *New York, Philadelphia & Norfolk R. R. v. Peninsula Produce Exchange,* 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916), the Court construed the phrase "to such property" as limiting only the word "injury"; thus, the words "loss" and "damage" are left unlimited, and the phrase "any loss, damage, or injury to such property" is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." 240 U.S. at 38, 36 S.Ct. at 232. The statute thus comprehends damages personal to the shipper, such as damages for delay in shipment. *Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936).

Second, defendant argues that the word "actual" which precedes the phrase "loss, damage, or injury" precludes the recovery of punitive damages, and possibly damages for mental distress as well. To accept this construction of the statute, we would be required to disregard the literal terms of the balance of its language and its evident overall meaning.

As preface, we summarize the language of the Carmack Amendment, 49 U.S.C. § 20(11), the material portions of which have been set forth in the margin in n. 2:

Any common carrier receiving property for transportation shall be liable for any loss, damage, or injury caused by it, and no contract or other limitation of any character shall exempt such carrier from the liability imposed. Any such carrier shall be liable for the *full actual loss, damage, or injury* caused by it notwithstanding any limitation of liability in any contract or in any tariff filed with the I.C.C., provided, however, that the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability, shall not apply where the I.C.C. has authorized the establishment of value-based rates, in which case liability may be limited to the declared value.

ing which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released

. . . and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agree upon . . . : *Provided, further,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law . . . .

Even if we assume that "*actual* loss, damage, or injury" does not include punitive damages or damages for mental distress, it does not follow that the statute extinguishes a carrier's liability for these elements of damages. The initial portion of the statute, which imposes liability, speaks only in terms of "*any* loss, damage, or injury." This liability is to attach regardless of any limitation of a *contractual* nature. The second portion of the statute, which contains the phrase "full actual loss, damage, or injury" specifies that the liability it speaks of, *i. e.,* liability for *actual* loss, may not be limited by contract *or by tariff.* Finally, the proviso permits liability to be limited where the I.C.C. has approved rates based on declared value, a circumstance not relevant here. Thus, to the extent that the Carmack Amendment has any impact on the availability of punitive damages and damages for mental distress under 49 U.S.C. § 316(d), we think its only effect would be to permit a carrier to limit its liability for such damages *by tariff*: the negative implication of the statute is that while liability for "*any* loss, damage, or injury" may not be limited by contract, it may be limited by tariff to the extent that it exceeds "full *actual* loss, damage, or injury." Defendant has not drawn our attention to any such limiting tariff.

Moreover, we are doubtful that the Carmack Amendment was intended to place any limitation at all on carrier liability except in the event of I.C.C. approval of value-based rates. The basic thrust of the Amendment is to *prevent* limitations of liability, and we are not persuaded that Congress, by invalidating attempted limitations of liability to less than "full actual loss, damage, or injury," intended to extinguish liability which otherwise might exist in the absence of any contractual or tariff limitation.

Our reading of the statute is bolstered by a further proviso contained therein, which states: "nothing in this section shall deprive any [shipper] of any remedy or right of action which he has under the existing law . . . ." While Part II of the Interstate Commerce Act, passed in 1935, c. 498, 49 Stat. 558, is not, strictly speaking, the existing law with respect to the 1906 Carmack Amendment, c. 3591, § 7, 34 Stat. 593, and while it is true that the savings clause cannot validate remedies otherwise inconsistent with the body of the statute, *see Adams Express Co. v. Croninger,* 226 U.S. 491, 507–08, 33 S.Ct. 148, 57 L.Ed. 314 (1913),[3] we think the quoted language tends to refute defendant's implicit contention that Congress in passing the Carmack Amendment effected any general limitation on the liability of carriers under other laws. *Cf. Nader v. Allegheny Airlines,* —— U.S. ——, —— – ——, 96 S.Ct. 1978, 1984–1985, 48 L.Ed.2d 643 (1976).

### III.

Since we conclude that the Carmack Amendment itself presents no barrier to the recovery of punitive damages or damages for mental distress for breach of the duty of nondiscrimination imposed by 49 U.S.C. § 316(d), we must decide as a matter of federal law whether each element of damages claimed by plaintiffs should be allowed. With respect to punitive damages, we are persuaded by the reasoning of those cases which have indicated that such damages are recoverable under the nondiscrimination provision of the Civil Aeronautics Act, 49 U.S.C. § 1374(b). See, e. g., *Nader v. Allegheny Airlines, Inc.,* 512 F.2d at 549–51; *Archibald v. Pan American World Airways, Inc.,* 460 F.2d at 16; *Wills v. Trans World Airlines, Inc.,* 200 F.Supp. at 366–67. We therefore hold that punitive damages are recoverable under 49 U.S.C. § 316(d). In order to be entitled to punitive damages, plaintiffs must, of course, prove that the defendant acted "wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil

---

**3.** Consistent with this principle, we express no opinion as to whether the filing of a tariff with the I.C.C. or I.C.C. establishment of value-based rates would have the effect of limiting liability for a violation of 49 U.S.C. § 316(d) to the "full actual loss, damage, or injury" (in some cases not to exceed declared value) specified by the Carmack Amendment.

obligations." *Wills,* 200 F.Supp. at 367, *quoted with approval in Archibald,* 460 F.2d at 16. Intentional, malicious conduct is susceptible to deterrence by the portent of sanctions such as punitive damages; thus, we believe that our decision is fully complementary to the congressional mandate and will help achieve compliance with the requirements of Part II of the Interstate Commerce Act.

Defendant argues that the recovery of punitive damages in this case is foreclosed by our decision in *Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129 (4 Cir. 1967). *Chandler,* however, was an action based on the common law liability of a carrier for damage to goods in transit, not a discrimination case brought under 49 U.S.C. § 316(d). Thus, we do not deem it controlling here.

■ Defendant also contends that any award of punitive damages against it would be futile and fail to achieve any deterrent effect, because the amount of the award would become a cost of service which would be borne ultimately by shippers through an increase in rates. We think that under a proper theory of ratemaking, punitive damages should not be considered as a cost of service in determining what rates are just and reasonable. They should be left uncompensated to diminish what would otherwise be the return to the carrier, who has selected the wrongdoing managers and employees.

■ The complaint alleged that defendant "acted in a reckless, willful, and wanton manner, in callous disregard of the rights of the plaintiffs." These allegations were sufficient to permit the plaintiffs to introduce supporting evidence, and, if proven, to entitle them to an award of punitive damages. Thus, the allegations relating to punitive damages were improperly stricken.

4. A wantonly *dispossesses* B of household furniture with the knowledge of B's neighbors. B is entitled to damages for humiliation. Restatement of Torts § 905, Comment d, Illustration 5.

## IV.

Finally, we consider whether 49 U.S.C. § 316(d) will support a recovery of damages for mental distress caused by a carrier's delay in delivering household goods. While there have been cited to us numerous South Carolina cases, with the parties each taking a different position as to the correct statement of applicable South Carolina law, we think it manifest that the question is one of federal law, since breach of the duty of nondiscrimination is a federal tort. The issue is one of first impression; we therefore turn to the general law of torts for guidance.

Traditionally, courts have been reluctant to redress mental injuries, "[b]ecause of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability . . . ." Restatement of Torts 2d § 46, Comment *a.* But these are poor reasons for denying recovery for any genuine, serious mental injury. "So far as distinguishing true claims from false ones is concerned, what is required is rather a careful scrutiny of the evidence supporting the claim; and the elimination of trivialities calls for nothing more than the same common sense which has distinguished serious from trifling injuries in other fields of the law." W. Prosser, Law of Torts § 12 at 51 (1971) (footnotes omitted). Some of the criteria which have been deemed helpful in undertaking "careful scrutiny of the evidence supporting the claim" are:

1. Whether the plaintiff has suffered other injuries concomitant to or resulting from the mental distress. Even the most cautious courts have allowed recovery for mental suffering accompanying physical injury caused by the defendant's wrongful acts. We believe that the existence of direct injury to the plaintiff's property is similarly a strong indication that claimed mental distress is actual rather than fanciful. *See* Restatement of Torts § 905 & Comments c, d, e.[4] The presence of physi-

A tortiously and wantonly evicts B and his family from his home. B spends several hours worrying about the securing of shelter for himself and family. In an action for trespass to the person, B is entitled to have this fact con-

cal injuries caused by the mental distress itself is also a reliable indicator. *See* Prosser, *supra*, § 12 at 59–60.

2. Whether the mental distress is severe. *See id.* at 59; Restatement of Torts 2d § 46.

3. Whether the defendant's conduct is extreme and outrageous and of a sort likely to produce emotional distress in a person of ordinary sensibilities. *See* Prosser, *supra*, § 12 at 55–59; Restatement of Torts 2d § 46.

4. Whether the defendant's conduct was intentional or reckless. *See* Prosser, *supra*, § 12 at 60; Restatement of Torts 2d § 46.

5. Whether there is some special relationship between the plaintiff and the defendant establishing a higher than usual duty for defendant toward plaintiff. *See* Prosser, *supra*, § 12 at 53.

■ In this case, the conduct of defendant which is alleged to have caused plaintiffs' mental distress concededly resulted in loss of and damage to plaintiffs' property and denial of plaintiffs' use of their property. Plaintiffs have alleged that their mental distress was severe, and that defendant's conduct was reckless, willful, and wanton. These allegations must be accepted as true in considering defendant's motion to strike. Plaintiffs and defendant occupy a special relationship, that of shipper and common carrier, which is said to create an extraordinary duty to safeguard plaintiffs' interests. *See id.* These factors tend to weigh in favor of plaintiffs' recovery.

On the other hand, we have serious doubts that even willful discrimination against a shipper resulting in delay in the receipt of household belongings is extreme and outrageous conduct which would be grossly offensive to a person of normal sensibilities. While in some cases extreme outrage may be found where the defendant has knowledge that the plaintiff is especial-

ly susceptible to injury through mental distress by way of particular conduct not outrageous in itself, *see* Prosser, *supra*, § 12 at 58, and while plaintiffs arguably have alleged such special susceptibility,[5] plaintiffs have failed to allege that defendant had any knowledge of their special circumstances. We thus must conclude that this factor is at best neutral in testing the sufficiency of plaintiffs' allegations.

■ On balance, we believe the allegations of the complaint regarding mental distress are sufficient to permit plaintiffs to introduce proof on the issue and they were improperly stricken. Thus, the judgment should be reopened for further proceedings to determine if plaintiffs should be permitted recovery of punitive damages and damages for mental distress.

*VACATED AND REMANDED. PLAINTIFFS TO RECOVER COSTS OF APPEAL.*

---

sidered as an element of damage. *Id.* Comment e, Illustration 8.

**5.** The complaint alleges:

[P]laintiff F. Patrick Hubbard was starting a new career as a law professor and the plain-

tiff Judy Hubbard, his wife, was at the time four months pregnant, and for these reasons the plaintiffs were particularly anxious to get established in their new home in July.