Judith A. MILLER

v.

AAACON AUTO TRANSPORT, INC.

No. FL 74–196–Civ–NCR.

United States District Court,
S. D. Florida,
Fort Lauderdale Division.

Feb. 21, 1978.

Morgan, Carratt & O'Connor, Fort Lauderdale, Fla., for plaintiff.

Barry R. Shapiro, Miami, Fla., Zola & Zola, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROETTGER, District Judge.

In this action arising under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11) plaintiff Judith A. Miller seeks recovery from defendant for

the loss of her 1971 Camaro. After a lengthy procedural history[1] the case was tried before this court which now enters the following findings of fact and conclusions of law.

### ·FACTS

In April of 1974 Ms. Miller shipped her 1971 Chevrolet Camaro with defendant Aaacon from San Francisco to Fort Lauderdale under a standard bill of lading. No extra tariffs were paid. When accepted for transport by defendant's driver in San Francisco the car was in good condition, having only a few minor dents and scratches. About 6:00 A.M. on April 13, 1974, while being transported by Aaacon's driver, the car overturned and ran into a canal near Ruskin, Florida. The accident was promptly reported by Ms. Miller to Mr. Jerome in defendant's New York office. Jerome requested an accident report, pictures of the car, and a statement from Miller's insurance company regarding her coverage. Ms. Miller was assured by Jerome that she would be reimbursed with no problem. However, over the next month Ms. Miller and her husband repeatedly called Jerome about their claim but had great difficulty reaching him. During this period, plaintiff was never contacted by defendant.

Failing to receive satisfaction from defendant, the Millers contacted an attorney. He contacted Jerome in mid-May and was told that Aaacon would not conduct an investigation until it received a statement from plaintiff's insurance company regarding her coverage. Ms. Miller had been told by her insurance company that the information requested by Aaacon had been sent. In fact, her company had sent a letter to Jerome on April 19th stating that her insurance had been cancelled. Ms. Miller therefore felt that there was nothing more she could do. On the advice of her attorney, who felt that Aaacon was trying to avoid payment, Ms. Miller did not send in the pictures or the accident report.

Ms. Miller remembers seeing a written claim form but cannot remember when it was received. The form was never sent in to Aaacon; nor does plaintiff remember it being requested. On May 21, 1974 plaintiff's attorney sent a demand letter to defendant with a copy of a complaint which he threatened to file in one week unless defendant satisfied plaintiff's claim.

By June 1, 1977 defendant under the direction of Ralph Zola had completed its investigation of the accident. The car was never delivered to plaintiff and is in a junk yard somewhere in Ruskin. Ms. Miller also lost approximately $350 to $500 worth of personal property which was destroyed when the car turned over in the canal. The market value of a 1971 Camaro hard top with air conditioning in the condition in which it arrived was nothing. Had it arrived in good condition, the car's market value would have been $2,500.

There is no competent evidence in the record that the accident was unavoidable. The only evidence presented by defendant on the issue is the hearsay statement of Ralph Zola, and the police report, also hearsay (eventually received by stipulation). The court must reject entirely the claim of the driver that he swerved to avoid an unidentified animal and thereby lost control. The statement is self-serving and exculpatory. Similarly lacking in credence is the driver's assertion he was travelling at the speed limit of 55 m. p. h. The skid marks compel a finding that the car must have been travelling at a speed in excess of the limit.

### CONCLUSIONS OF LAW

Under 49 U.S.C. § 20(11) and 49 U.S.C. § 319 liability is imposed on a motor carrier for the full actual loss or damage to property transported by the carrier without regard to the issue of negligence on the part of the carrier. In order to make out a prima facie case, the shipper need only

---

1. See: *Miller v. Aaacon,* 434 F.Supp. 40 (S.D.Fla.1977); *Miller v. Aaacon,* 545 F.2d 1019 (5th Cir. 1977).

prove that the goods were delivered in good condition, that they arrived in a damaged condition, and the amount of damage. The burden then shifts to the carrier to prove that it was free from negligence and that the damage was due to one of the excepted causes relieving the carrier of liability. *Missouri Pacific R. R. v. Elmore & Stahl*, 377 U.S. 134, 139, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964).

## NOTICE TO CARRIER

■ Defendant asserts that plaintiff is barred from recovery by her failure to file a written notice of claim as required by Section 2(b) of the Uniform Straight Bill of Lading, incorporated by reference in defendant's bill of lading. Although this issue was initially raised in defendant's answer by a denial of plaintiff's allegations, it was omitted in defendant's pretrial stipulation.

It is well settled that the written claim requirement is valid and enforceable and that oral notification and/or actual knowledge of the claim is insufficient to impose liability upon a carrier for damage to shipments. *Georgia, Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1915); *East Texas Motor Freight Lines v. U. S.*, 239 F.2d 417 (5th Cir. 1956). The purpose of the written claim requirement is not to avoid the payment of just claims, but to facilitate the prompt investigation of claims and insure equality of treatment among shippers. *Georgia, Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. at 197, 36 S.Ct. 541.

In the *Blish Milling* case the Supreme Court adopted a liberal view of what constitutes a written claim:

> "Granting that the stipulation is applicable and valid, it does not require documents in a particular form. It is addressed to a practical exigency and it is to be construed in a practical way." *Id.* 241 U.S. at 198, 36 S.Ct. at 545.

Thus the court found that a series of telegrams contained an adequate statement of the claim to satisfy the requirement.

The Fifth Circuit has held that the requirement is satisfied if the written instruments supply "sufficient information upon which a prompt and complete investigation may be based." *Thompson v. James G. McCarrick Co.*, 205 F.2d 897 (5th Cir. 1953). And the notice is sufficient if a carrier cannot draw any inference from it other than that a claim for damages was contemplated, even if the writing does not contain a formal demand for damages. *Delaware, L. & W. Ry. v. U. S.*, 123 F.Supp. 579 (S.D.N.Y.1954).

In the case sub judice, the court finds that the written notice requirement was met by the receipt by defendant of plaintiff's demand letter and the copy of the complaint as well as the correspondence and extensive negotiations which occurred between the parties after defendant was orally notified of the claim. The court finds this case distinguishable from *East Texas Motor Freight Lines v. U. S.*, 239 F.2d 417 (5th Cir. 1956), relied on by defendant. In that case there were no extensive dealings between the parties and the shipment was not totally destroyed.

Even if the written claim requirement were not satisfied in this case the court would be constrained to conclude that defendant is estopped from asserting this defense by its conduct in this case. It appears to the court from the evidence that defendant's initial concern in this case was the extent of plaintiff's insurance coverage and that Ms. Miller was therefore led to believe that there was nothing she could do to aid defendant in investigating her claim. Although Aaacon sent plaintiff its standard claim form, the cover letter does not refer to the fact that the accompanying form must be filled out, and in view of defendant's conduct and representations, only served to reinforce plaintiff's belief that she need take no further action.

The court recognizes that the Supreme Court has held that the written claim requirement may not be waived by the carrier. *Georgia, Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 191, 197, 36 S.Ct. 541, 60 L.Ed. 948 (1916). However that decision and the case law following it must be con-

sidered in the light of the policy behind it which seeks to prevent discrimination by carriers among shippers. In addition, the court recognizes that carriers also have a duty, vis-a-vis their relationship to shippers to safeguard shippers' interests. *Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224, 1230 (4th Cir. 1976). The mechanical application of the rule regarding waiver of the written claim requirement outside a commercial context of protecting competing shippers to the facts in this case would not serve the purposes for which the rule was created. Instead of being a shield to shippers it would work an injustice by placing a sword in the hands of common carriers to injure consumers—such as plaintiff—who are not armed with the knowledge of legal technicalities but rely in good faith on assurances that their claims will be taken care of.

Having concluded that plaintiff has satisfied the prerequisites to filing suit, the court now considers the merits of her claim and finds that plaintiff has made out a prima facie case of liability. Defendant therefore has the burden of proving that the damage to plaintiff's car was caused by the pleaded defense of an act of God or other exception. *Missouri Pacific R. R. v. Elmore & Stahl*, supra.

> An Act of God can be defined as "a sudden, and unexpected manifestation of the forces of nature which man cannot resist; . . . an accident produced by physical causes which are irresistible, and a natural necessity, which could not have been occasioned by the intervention of man." 1 Am.Jur.2d, Act of God § 1 (1962).

Defendant asserts that the animal jumping in front of the car was an act of God because there was no way for the driver to have avoided it. Although in appropriate circumstances such an occurrence might be an "Act of God", the court finds that defendant's conclusions in this case beg the question. Defendant has offered no credible evidence to show that the appearance of the animal was a sudden unexpected occurrence under the circumstances and that the accident was unavoidable. Therefore, the court finds that defendant has failed to meet its burden on the defense of Act of God. Accordingly, plaintiff is entitled to recover from defendant for her actual damages, loss or injury caused to her property. *Federated Dept. Stores, Inc. v. Brinke*, 316 F.Supp. 1402 (S.D.Fla.1970), aff'd 450 F.2d 1223 (5th Cir. 1971). Ordinarily this will be determined by computing the difference between the market value of the property in the condition in which it should have arrived, and the market value in the damaged condition in which it did arrive. *Gulf, C. & S. F. Ry. Co. v. Texas Packing Co.*, 244 U.S. 31, 37, 37 S.Ct. 487, 61 L.Ed. 970 (1917). Applying this test to the facts in this case the court finds that plaintiff is entitled to the sum of $2,500 actual damages for the loss of her car. Additionally, she lost $300 worth of personal property but is limited by the tariff to $50.

## PUNITIVE DAMAGES

Plaintiff has also claimed punitive damages for defendant's unjust refusal to pay her claim, relying primarily on the authority of *Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224 (4th Cir. 1976) and 49 U.S.C. § 8.

The court would agree with the reasoning set forth in the *Hubbard* case that the Carmack Amendment does not bar an award of punitive damages, and that in appropriate cases such damages may be awarded against a motor carrier under 49 U.S.C. § 8 when the carrier has violated the provisions of Ch. 1 of Title 49 made applicable to it by 49 U.S.C. § 319. In addition, punitive damages might be recoverable under federal common law, where a carrier has injured a plaintiff by acting with "actual malice or reckless or wanton indifference to the rights of the plaintiff." *International Brotherhood of Boilermakers, etc. v. Braswell*, 388 F.2d 193, 199 (5th Cir. 1968). However, the facts in the case sub judice do not support an award of punitive damages. Although there is much evidence in the record concerning Aaacon's past history of misconduct in seeking to avoid payment of

just claims, the court finds that the evidence of Aaacon's conduct *prior* to the time Ms. Miller filed suit in this case is not indicative of gross and wilful misconduct.

The court has also considered the evidence of Aaacon's conduct subsequent to the filing of suit, which plaintiff claims supports a finding of punitive damages.[2] The court finds that defendant's tactics in this court of grudging retreat, rock by rock, fence row by fence row—usually with another defense not pleaded before—combined with their failure to inform this court or the Fifth Circuit Court of Appeals of pertinent decisions concerning the validity of defendant's arbitration clause have unduly prolonged this litigation. The court must observe that defendant has established a pattern of this type of behavior. As the Interstate Commerce Commission noted:

> Aaacon and Auto Trip have, throughout the course of these proceedings, repeatedly filed petitions seeking leave to admit additional evidence and argument, and petitions for reconsideration of the Commission's orders denying the relief sought . . . [T]hese numerous petitions have unnecessarily lengthened the record in this proceeding . . . . 124 M.C.C. 493, 507 (1976).

See also *Aluminum Products Distributors v. Aaacon Auto Transport,* 549 F.2d 1381, 1385 (10th Cir. 1977) (concluding paragraphs of opinion). This conduct, repeated in the case sub judice, is reprehensible.

Defense counsel may have felt that they were merely acting in the interests of their client, and were not technically evading any ethical duties.[3] However, counsel has an obligation as an officer of the court to inform the court of significant developments in the law—even if not controlling precedents required to be disclosed by D. Rule 7–106(A)(1)—which would affect the court's decision in a case and might avoid protracted and piecemeal litigation such as

occurred here. Only because the other decisions were not controlling on this court does the court conclude defendant's conduct of the litigation does not support an award of punitive damages.

## ATTORNEY'S FEES

The claim for attorney's fees poses a different question. Plaintiff seeks recovery pursuant to 49 U.S.C. § 8 which provides an award of attorney's fees if a carrier "shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter [chapter 1] prohibited or declared to be unlawful."

This section would not be applicable to defendant but for 49 U.S.C. § 319, which provides that the provisions of 49 U.S.C. § 20(11) and (12), as well as any appropriate provisions of Chapter 1 necessary for their enforcement are made applicable to motor carriers.

This court has already declared, as have two circuit courts, that defendant's arbitration clause is an unlawful attempt to limit its liability in violation of 49 U.S.C. § 20(11). See: *Aluminum Products Distributors, Inc. v. Aaacon Auto Transport, Inc.,* 549 F.2d 1381 (10th Cir. 1977); *Aaacon Auto Transport, Inc. v. State Farm Mutual Auto Ins.,* 537 F.2d 648 (2d Cir. 1976); *Miller v. AAA-Con Auto Transport, Inc.,* 434 F.Supp. 40 (S.D.Fla.1977). The court further finds that the use of the arbitration clause in this case caused plaintiff to incur unnecessary expense and attorney's fees by prolonging the litigation. Therefore the court finds that defendant has violated the provisions of 49 U.S.C. § 20(11) to the injury of plaintiff and plaintiff is entitled to an award of reasonable attorney's fees under 49 U.S.C. § 8.

In addition, the court finds that an award of attorney's fees would be appropriate pursuant to the court's equitable power to

---

**2.** The court considers this evidence under Rule 15(b) F.R.Civ.P.

**3.** It is difficult to avoid observing that defendant is a closely-held family corporation repre-

sented in court by the family law firm. The identity of interests apparently blurs counsel's perception of their duty as officers of the court.

award fees where appropriate in the interests of justice. *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). This exception to the general American rule of attorney's fees was recognized in *Alyeska Pipeline Service Co. v. Wilderness Society, Inc.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) where the losing party has acted in "bad faith, wantonly or for oppressive reasons." 421 U.S. at 258, 95 S.Ct. at 1622.

In the case sub judice defendant acted in bad faith in failing to promptly investigate and pay plaintiff's claim, and forced her to resort to protracted litigation in order to obtain relief. Therefore, plaintiff is entitled to attorney's fees. See *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *McEnteggart v. Cataldo*, 451 F.2d 1109 (1st Cir. 1971).

Based on the foregoing findings of fact and conclusions of law as well as the court's prior findings of fact entered in this case, the court finds that plaintiff is entitled to recover her actual damages for the loss of her car in the amount of $2,500, plus interest from the date of the accident, plus the loss of personal property in the amount (limited by the tariff) of $50, plus a reasonable attorney's fee to be determined after a hearing (see *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), plus costs. In addition, plaintiff is entitled to the $250 fine assessed against defendant by this court on June 15, 1976 for its failure to comply with the pretrial procedures of this court.

JUDGMENT shall be entered accordingly.