**Steven ROTHENBERG, Plaintiff,**

v.

**AERO MAYFLOWER TRANSIT CO., INC., Defendant.**

**Civ. A. No. 78–2354.**

United States District Court,
District of Columbia.

March 11, 1980.

---

Steven Rothenberg, pro se.

Donna M. Murasky, William Allen, Covington & Burling, Washington, D. C., for defendant.

MEMORANDUM AND ORDER

OBERDORFER, District Judge.

I

A.

Plaintiff is a young lawyer who was married and lived in Chicago until the summer

of 1977 when he accepted a job offer from the Civil Aeronautics Board with the understanding that he would begin work on August 8, 1977. On May 27, 1977, plaintiff executed an order for service with defendant, Aero Mayflower Co., through defendant's agent, Olsen Brothers, Inc., under which plaintiff and defendant agreed that defendant would move plaintiff's household goods from Chicago to Seabrook, Maryland. The order for service stated that plaintiff's goods were to be picked up between July 28 and July 30, 1977, with July 28 as the "primary" pick-up date, and delivered between August 1 and August 5, 1977. Plaintiff's lease on his apartment in Chicago was to expire on July 31, 1977, and plaintiff was scheduled to begin his new job in Washington on August 8, 1977.

On July 15, 1977, Richard Burin, the employee of Olsen Brothers, Inc., who had executed the order for service with plaintiff on behalf of Olsen Brothers and the defendant, Aero Mayflower, telephoned plaintiff's home and spoke with plaintiff's wife, stating that defendant would not be able to pick up plaintiff's shipment during the agreed period and that plaintiff should make alternate arrangements for his move. Later that same day, plaintiff telephoned Olsen Brothers and, unable to speak with Mr. Burin, left a message that he still wanted his shipment picked up between July 28 and July 30. On the following day, Olsen Brothers mailed plaintiff a letter notifying him that defendant would be unable to transport his shipment within the agreed dates set forth in the May 27, 1977, order for service.

On July 18, 1977, plaintiff telephoned Olsen Brothers and spoke with Mr. Burin. In response to plaintiff's question as to when plaintiff's shipment could be moved, Mr. Burin stated that defendant could no longer guarantee pickup before August 30, 1977. On or about July 19, 1977, plaintiff notified Mr. Burin by telephone that plaintiff had made alternate arrangements for the shipment of his household goods, and that he was cancelling his order for service. Plaintiff confirmed this by a letter dated July 25, 1977, and addressed to Olsen Brothers.

Plaintiff was able to contract with another common carrier to have his goods picked up during the period in which defendant had agreed to pick them up, and to have them delivered between July 29 and August 11, 1977. Plaintiff's goods were in fact delivered on August 8, 1977, three days after the time in which defendant had agreed to deliver them. Plaintiff reported for work at his new job on August 10, 1977, rather than on August 8, the date he was originally scheduled to begin. Plaintiff alleges damages of $70.60 incurred in his efforts to make substitute arrangements for the shipment of his goods, including compensation for his time for the day that he was taken away from his studies for the bar examination. Plaintiff also alleges damages of $5,759.20 incurred as a consequence of the late delivery of his goods, including compensation for living without furniture or other personal possessions for the three days between August 5 and 8, compensation for time he spent waiting for his goods, and compensation for "embarrassment" he suffered at work as a result of reporting late. In addition, plaintiff seeks punitive damages of $50,000.

B.

Orders for service are customarily executed by defendant through an agent and transmitted by telephone by a service representative of the agent to an employee of defendant. The defendant's employee records the order and transfers the record to the "traffic planner" responsible for the region in which the shipment is to be picked up. The traffic planner reviews incoming orders for service and, if "reasonably certain" that defendant can handle the order, see Affidavit of Patsy R. Freeman, filed August 13, 1979, at ¶ 16, "accepts" the order and notifies the agent. In this case, plaintiff's order for service was "accepted" by the defendant's traffic planner on June 1, 1977.

On February 14 and March 7, 1979, the defendant, in answers executed by John K. Peters, defendant's Vice President and As-

sistant Secretary, filed in response to plaintiff's interrogatories, made admissions that it was unable to transport plaintiff's shipment during the period agreed to in the order for service. On August 13, 1979, however, defendant filed, to accompany its motion to dismiss and for partial summary judgment of the same date, an affidavit executed by Martha R. Miller, defendant's traffic planner in charge of plaintiff's region, in which Ms. Miller states that defendant could in fact have picked up and delivered plaintiff's shipment within the dates agreed to in the order for service.

On August 15 and September 6, 1979, defendant filed numerous "amendments" to its answers to interrogatories and responses to requests for admission. On September 15 defendant filed a motion for leave to file amendments to its responses to requests for admission; it has taken the position, however, that leave of court is not required for the filing of amendments to answers to interrogatories. Plaintiff has moved to strike defendant's amendments and for a finding of contempt.

## II

Plaintiff has moved for a summary judgment that defendant is liable for breach of contract and for fraudulent misrepresentation, and for judgment with respect to his common law claims of discrimination. Defendant has moved for summary judgment on the fraudulent misrepresentation claims and on the issues of whether plaintiff may obtain punitive damages, damages for "embarrassment," and damages for injuries sustained by his wife, who has not yet been joined as a party. Defendant's recent motion for judgment clarifies its earlier motion for summary judgment and encompasses all claims of fraudulent misrepresentation that might be within fair intendment of the complaint.

For reasons stated more fully below, the Court has concluded that plaintiff is entitled to a summary judgment that defendant is liable for breach of contract, but that defendant is entitled to summary judgment on the claims of fraudulent misrepresenta-

tion, including the demand for punitive damages. The Court has also concluded that defendant's motion for summary judgment on the issue of damages for "embarrassment" should be granted to the extent plaintiff seeks to recover for mental anguish or suffering, but denied to the extent he alleges injury to his reputation and interference with his contractual relationship with his employer. With respect to injuries allegedly sustained by plaintiff's wife, plaintiff has not yet moved to join his wife, despite one motion to amend, and has apparently abandoned any intent to do so. *See* Plaintiff's Pretrial Brief; Transcript of Proceedings of February 25, 1980. In any event, any such motion at this point would be untimely. Accordingly, defendant's motion for summary judgment as to damages sustained by plaintiff's wife will be granted. With respect to plaintiff's claims of common law discrimination, the Court finds it unnecessary to reach that issue given its rulings that defendant is liable to plaintiff for his full damages for breach of contract and that plaintiff may not recover any punitive damages. Accordingly, the case will proceed to trial only on the issue of plaintiff's actual damages.

In light of the rulings on the motions for summary judgment with respect to the breach of contract and fraudulent misrepresentation, plaintiff's motion to strike defendant's amendments to answers to interrogatories is moot. His motion in the alternative for a finding of contempt will be denied.

## III

■ The breach of contract claim, under the interest analysis applied as the District of Columbia choice of law rule, is governed by District of Columbia law. The District of Columbia has the most significant contacts with this litigation. It is, as plaintiff notes, "the domicile of plaintiff and defendant, plaintiff's place of business, one of defendant's places of business, and the place where the most significant [alleged] injuries occurred." Plaintiff's Statement of Points and Authorities in Opposition to De-

**404**

fendant's Motion to Dismiss, or in the Alternative for Summary Judgment, filed September 6, 1979.

▆ Under both District of Columbia law and general principles of contract, plaintiff is entitled to prevail as a matter of law on his breach of contract claim. At oral argument on February 25, counsel for defendant commendably conceded that plaintiff was entitled to treat the acts of defendant's agent as those of the defendant; such a concession is unavoidable, of course, in light of basic agency law, since all of the agent's actions in this case were clearly within the scope of its apparent authority. Instead, defendant has, in essence, advanced two main contentions. First, it contends that the "order for service" signed May 27, 1977, is not a contract, or at least not the complete contract in this case. The order for service belies defendant's claim, not vigorously asserted here, that it is not a contract at all. The parties clearly contemplated that an agreement on the move had been reached; mutual promises were exchanged. There is nothing in the order for service indicating, much less conspicuously noting, that the order was intended as merely provisional, simply a statement of defendant's intention to consider, at some indefinite point in the future, accepting plaintiff's shipment for moving. Neither is there any indication that the parties intended that the availability of space on defendant's trucks be a condition precedent irrespective of the number of further orders that defendant executed with other shippers; rather, defendant implicitly warranted that space was and would remain available. In any event, plaintiff reasonably relied on the order, to his detriment, by refraining from making alternate arrangements for moving his effects (until notified of defendant's inability to do so). That alone is enough to make the order for service enforceable as a quasi-contract. *See A. Corbin, Contracts* § 193 (1962).

▆ In support of its contention that the order for service is not the complete contract, defendant proffers parol evidence of certain additional agreements alleged to have been made by the parties to the order for service. This sort of evidence, however, is clearly inadmissible for the purposes for which defendant proffers it. The writing from all appearances purports to be a complete integration of the contract between the parties, and must be presumed as such under District of Columbia law. *See e. g., Purcell v. IBS*, Civ. No. 79–1401 (D.D.C.), Memorandum and Order of January 8, 1980. Courts have recognized the contractual nature of orders for service, and have admitted parol evidence only for the limited purpose of challenging the very validity of the contract. *See, e. g., Chandler v. Aero Mayflower Co.*, 374 F.2d 129 (4th Cir. 1967). That is not the purpose for which defendant proffers it here. Moreover, there is no ambiguity on the face of the writing that might justify recourse to parol evidence in interpreting the agreement.

▆ Second, defendant contends that plaintiff "jumped the gun" by making new arrangements for the delivery of his goods after being repeatedly informed that the dates established by the order for service contract could not be honored, and that at least a full month's delay was to be anticipated. In an apparent attempt to support this argument, defendant offers to prove that it could in fact have delivered plaintiff's goods on time. Defendant's contentions are totally without merit. Defendant does not dispute the facts concerning its agent's repeated representations to plaintiff that the contract could not be honored. Plaintiff was entitled to treat these statements as an anticipatory breach of the order for service, and therefore to make alternate arrangements for moving his goods. In fact, as plaintiff notes, he may well have been under an obligation to make such alternative arrangements in order to mitigate his damages.

▆▆ Defendant also at times seems to suggest that the fact that plaintiff was handed copies of certain pamphlets containing statistics relating to defendant's performance of its orders for service, and the fact that several boxes on the order for service were checked off to indicate that

plaintiff had received these pamphlets, mean that plaintiff was on notice that there was at least some chance that his goods would not be delivered by the agreed-upon dates, and that therefore defendant cannot be said to have breached the contract. Defendant apparently contends that this statistical information vitiated the dates boldly set forth in the contract itself, so that there was, in effect, no contract, and defendant had a carte blanche to delay plaintiff's shipment. Alternatively, or additionally, defendant seems to suggest that any reliance by plaintiff on the dates in the order for service was unreasonable. All of these contentions must be rejected out of hand. Even without deciding the adequacy of the statistical information itself, it is clear as a matter of law that its incorporation by reference in the order for service, by means of check boxes, was not a sufficiently conspicuous disclosure to mitigate the defendant's obligations here. Moreover, even if the risk-of-delay information had been printed boldly on the face of the order for service, it would have been inherently irreconcilable with the other portions of the contract purporting to set agreed dates, and so would have been a legal nullity.

Accordingly, plaintiff is entitled to prevail on his breach of contract claim.

## IV

Plaintiff has advanced five claims of fraudulent misrepresentation in this action, based on: (1) defendant's statement that it could pick up and deliver plaintiff's shipment during the agreed dates in order for service; (2) defendant's failure to disclose that it has a policy of overbooking; (3) defendant's failure to disclose that its agents would not be able to determine at the time the order for service was signed what space was available; (4) defendant's purveyance of inaccurate data concerning delivery delays; and (5) defendant's representation, through previous counsel, that it would not assert any jurisdictional defenses. Plaintiff has not alleged fraudulent misrepresentation on the basis of defendant's statements, through its agent, on July 15, 16 and 18, 1977, that it would not be able to honor the order for service. With respect to both his fraudulent misrepresentation claims and his accompanying prayer for punitive damages, plaintiff relies most heavily on *Nader v. Allegheny Airlines*, 365 F.Supp. 128 (D.D.C.1973), *rev'd* 512 F.2d 527 (D.C. Cir.1975), *rev'd* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), *on remand* 445 F.Supp. 168 (D.D.C.1978). Careful consideration of the facts of *Nader*, the undisputed material facts here, and the standards applicable to claims of fraudulent misrepresentation and accompanying claims for punitive damages establish that the plaintiff is not entitled to take any of his fraudulent misrepresentation claims to the jury, or to recover any punitive damages.

### A.

In *Nader*, the plaintiff brought suit against an airline that had "bumped" him from a flight for which he not only had a confirmed reservation but actually held a ticket. The plaintiff had appeared at the gate with his ticket five minutes before departure time and been denied a seat at that time. He asserted two bases of liability: a common-law claim of fraudulent misrepresentation based on defendant's alleged failure to inform him of its overbooking practices, and a statutory action under section 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b), based on defendant's alleged failure to afford him the boarding priority required under that statute and regulations promulgated under it. He did not seek damages for the bumping *per se.* After one round of decisions culminating in an opinion by the Supreme Court,[1] the trial

---

1. The trial court initially entered judgment for the plaintiff on both claims, awarding $10 in compensatory damages and $25,000 in punitive damages. The Court of Appeals reversed. It held that proceedings on plaintiff's fraudulent misrepresentation claims had to be stayed pending a determination by the Civil Aeronautics Board of whether defendant's alleged failure to disclose its practice of overbooking constituted a deceptive practice under section 411 of the Federal Aviation Act. It was the Court of Appeals' view that if there were no violation

court on remand found for plaintiff on both his statutory and common law claims. It awarded, in addition to compensatory damages, $15,000 in punitive damages on the fraudulent misrepresentation claims, based on its conclusion, applying the standard enunciated by the Court of Appeals, that the defendant did not "reasonably [believe] that its policies were completely lawful and in fact carried the approval of the Board."

### B.

■ The elements of the common-law tort of fraudulent misrepresentation which a plaintiff must prove in order to recover are: (1) a false representation, (2) with respect to a material fact, (3) made with knowledge of its falsity, (4) and with the intent to deceive, (5) with action taken in reliance upon the representation. *Nader v. Allegheny Airlines*, 512 F.2d 527, 541 n. 32 (D.C.Cir.1975), *rev'd on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen.

■ As noted, plaintiff's first three claims of fraudulent misrepresentation are based on defendant's statement that it could handle his shipment within the dates set and its failure to disclose that it overbooks and that its agents could not determine when the order for service was executed what space would be available. As to these claims, plaintiff has failed to establish the materiality of the misrepresentations. Although these statements and non-disclosures would have been material if defendant had "str[ung] the plaintiff along" until the last minute, *see, e. g., Hanke v. Global Van Lines*, 533 F.2d 396, 399, 411 (8th Cir.

1976); *Nader v. Allegheny Airlines*, 445 F.Supp. 168 (D.D.C.1978), they were not material here, where defendant notified plaintiff more than two weeks before the agreed pickup date and a full three weeks before the delivery date that it would not honor the terms of the order for service. Plaintiff's reliance on *Nader* is therefore misplaced. Passengers awaiting departure of a scheduled commercial plane have and are entitled to different expectations from a person whose contract for carriage of household goods is broken by the carrier anticipatorily two or three weeks before their anticipated pick-up and delivery. One moving household goods does not, two to three weeks before his move, have the same stake in his "confirmed" reservation as the prospective airline passenger standing at the gate five minutes before his supposed departure, having made his "confirmed" reservation three days earlier. Plaintiff has failed to establish that there are generalized expectations, *see Nader v. Allegheny Airlines*, 512 F.2d 527, 542 (D.C.Cir.1975), *rev'd on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), that movers of household goods must give more than two to three weeks notice of inability to honor an order for service. Instead, the Court is persuaded that the defendant's affirmative act in providing plaintiff with more than two weeks notice was sufficient to undo its past misconduct to the limited extent of relieving it from liability for fraud or for punitive damages. Defendant remains fully liable to compensate plaintiff for all of the actual damages he suffered as a result of its breach of the order for service. But more than compensatory damages are not appropriate. Defendant's conduct here, when viewed in its entirety, including the two-week notification, would

of section 411, plaintiff could not prevail on his claim of fraudulent misrepresentation. As to the statutory claim, the Court of Appeals remanded for further findings on the merits, but held that punitive damages were not recoverable because defendant's conduct contained no "elements of intentional wrongdoing or conscious disregard for" plaintiff's rights.

On writ of certiorari, the Supreme Court reviewed the Court of Appeals' ruling staying the proceedings on plaintiff's fraudulent misrepresentation claims and reversed, holding the common law remedy was neither so inconsistent with the regulatory scheme as to require application of the doctrine of primary jurisdiction, nor so entirely co-extensive with the section 411 remedy that a finding of no liability under that section would "immunize" the carrier from liability on the common law claims.

not permit a reasonable jury to infer "malice or reckless disregard for the rights of others," or to find unreasonable defendant's belief that its practices were lawful. *Id.* at 551. For these reasons, defendant is entitled to summary judgment on the fraudulent misrepresentation issues and on the claim for punitive damages.[2]

Plaintiff has not vigorously prosecuted his fourth claim of fraudulent misrepresentation. Adequate allegations of reliance on defendant's data are lacking; indeed, any allegations of such reliance would appear to be inconsistent with the first three claims, or at least to undercut them significantly.

 With respect to the fifth claim, plaintiff has failed to raise an issue as to the third, fourth, and fifth elements outlined in *Nader.* Plaintiff has not introduced any evidence tending to demonstrate that the previous defense counsel's representation was made other than in good faith, or that at the time the statement was made counsel knew or suspected that it was not true. In any event, plaintiff's reliance on the representation may not be deemed to have been reasonable, as it is among the most elementary of legal propositions that jurisdictional defects are not waivable.

## V

 The same considerations that indicate that punitive damages are inappropriate here persuade the Court that damages for mental anguish or suffering are also inappropriate. Although the cases are not entirely in agreement on the standard to be applied in determining when plaintiffs may recover for mental anguish, the soundest standard is set out in *Hanke v. Global Van Lines, Inc.,* 533 F.2d 396 (8th Cir. 1976),

quoting section 46 of the Restatement (Second) of Torts:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is . . . liab[le] for such emotional distress . . . .[3]

In *Hanke,* the "extreme and outrageous conduct" consisted of repeated assurances that delivery would be made on a certain day, for the apparent purpose of preventing plaintiff from taking certain steps to provide for herself, and with the apparent knowledge that the plaintiff was suffering substantial emotional distress. Moreover, the delivery in *Hanke* was delayed over 100 days. The contrasts between the circumstances in *Hanke* and the circumstances here are apparent and decisive.

*Hubbard v. Allied Van Lines,* 540 F.2d 1224 (4th Cir. 1976), appeared to apply a less restrictive standard than the section 46 test endorsed in *Hanke.* However, even the *Hubbard* Court acknowledged its "serious doubts that even willful discrimination against a shipper resulting in delay in the receipt of household belongings is extreme and outrageous conduct which would be grossly offensive to a person of normal sensibilities." *Id.* at 1230. Moreover, although the *Hubbard* Court denied the defendant's motion for summary judgment as to damages for mental anguish, it was presented with a vastly different set of circumstances. The defendant there, instead of notifying plaintiff two weeks in advance about its inability to honor the moving agreement, actually picked up plaintiffs' goods for delivery, delivering some of them three weeks late and some of them almost three months late. Here, of course, by virtue of the defendant's advance notification, plaintiff

---

**2.** Under District of Columbia law, which would appear to apply to the fraudulent misrepresentation claims as well as the contract claim, as under the law of virtually all other jurisdictions, punitive damages are not recoverable for mere breach of contract. Moreover, the same circumstances that indicate that punitive damages for fraudulent misrepresentation are inappropriate convince the Court that punitive damages should not be recoverable on a common law discrimination claim either. *See also*

*Hubbard v. Allied Van Lines,* 540 F.2d 1224, 1230 (4th Cir. 1976).

**3.** *Hanke* quotes comment d to section 46 as well, which goes considerably beyond the text of section 46 in restricting the situations in which plaintiffs may recover for mental anguish. Comment d is overly restrictive, and to the extent *Hanke* endorses it, it would seem to represent a minority view. *Hanke* and *Hubbard* should probably be read hand in hand.

was able to make alternate arrangements so that his goods were only a few days late. And the notification reflects favorably upon defendant's consideration for its disappointed customer.

For these reasons, the Court is persuaded that to the extent plaintiff's claimed damages for "embarrassment" encompass damages for mental anguish, defendant's motion for summary judgment as to that issue should be granted. It appears, however, that plaintiff has alleged some compensable injuries under the rubric of "embarrassment". At a minimum, an employer's first impressions of a new employee are often determinative of reputation and long-term status. To that extent, the breach of contract hampered his first appearance at his new job. This is a tangible injury for which plaintiff may recover any damages which he can prove. To the extent plaintiff's claimed damages for "embarrassment" embrace such tangible damages, defendant's motion should and will be denied.

In view of the foregoing, it is this 10th day of March, 1980, hereby

ORDERED: That plaintiff's motion for summary judgment as to defendant's liability for breach of contract is granted; and it is

FURTHER ORDERED: That defendant's motion for summary judgment as to its liability for fraudulent misrepresentation is granted, and plaintiff's motion on that issue denied; and it is

FURTHER ORDERED: That defendant's motion for summary judgment as to punitive damages and damages based on injuries sustained by plaintiff's wife is granted; and it is

FURTHER ORDERED: That defendant's motion for summary judgment as to damages for "embarrassment" is granted to the extent plaintiff seeks damages for mental anguish and denied to the extent he seeks compensation for injuries to his reputation or for interference with his contractual relationship with his employer; and it is

FURTHER ORDERED: That plaintiff's motion to strike defendant's amendments to answers to interrogatories is denied as moot, and that his motion in the alternative for a finding of contempt is denied.